FILED'07 JUN 05 15:09USDC-ORP

Joseph A. Grube, OSB # 96297
RICCI GRUBE AITA, PLLC
1601 Second Avenue
Suite 1080
Seattle, WA 98101
Telephone: 206-624-5975
Facsimile: 206-770-7607
Email: jgrube@connectexpress.com

UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF OREGON

ANNE MARIE KREIDLER and MICHAEL
S. REED,

              Plaintiffs,

    v.

MELODY DAWN TAYLOR, individually,
and MELODY DAWN TAYLOR as Trustee
of the MELODY D. TAYLOR'S CHILDREN
TRUST,

              Defendants.

NO.  05-01262-BR

**JUDGMENT**

      Based on the Court's Verdict, Findings of Fact and Conclusions of Law entered on

May 24, 2007 and attached hereto as Attachment "A", judgment is entered as follows:

      A.      for Plaintiffs on part of Plaintiffs' breach-of-contract claim.  No money damages

are awarded.

      B.      for Defendants on part of Plaintiffs' breach-of-contract claim.   No money

damages are awarded.

      C.      For Plaintiffs on Plaintiffs' quiet-title claim.  Title to the real property described

in Attachment "B", located in Gresham Oregon, is owned as follows: 50% by

Plaintiffs (jointly), and 50% by Melody Dawn Taylor.

PAGE  1 – JUDGMENT

Entered on Docket_____

D.    For Plaintiffs on Defendants' equitable mortgage counterclaim.

E.    For Defendants on Plaintiffs' fraudulent conveyance claim.

This is a final judgment and resolves all claims by and against all parties.

Dated this 5ᵗʰ day of June, 2007.

United States District Judge

PAGE  2 – JUDGMENT                          Entered on Docket_____

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ANNE MARIE KREIDLER and                    05-CV-1262-BR
MICHAEL S. REED,

          Plaintiffs,                      VERDICT, FINDINGS OF
                                           FACT, AND CONCLUSIONS OF
v.                                         LAW

MELODY DAWN TAYLOR,
individually, and MELODY DAWN
TAYLOR as Trustee of the
MELODY D. TAYLOR'S CHILDREN
TRUST,

          Defendants.


JOSEPH A. GRUBE
Ricci Grube Aita, PLLC
1601 Second Avenue
Suite 1080
Seattle, WA  98101
(206) 624-5975

          Attorneys for Plaintiffs

JONATHAN M. RADMACHER
McEwen Gisvold LLP
1600 Standard Plaza
1100 S.W. Sixth Avenue
Portland, OR 97204
(503) 226-7321

          Attorneys for Defendants


1 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW


Kreidler et al. v. Taylor et al.
Case No. 05-CV-1262-BR
                                                    EXHIBIT "A"

**BROWN, Judge.**

Plaintiffs Anne Marie Kreidler and Michael S. Reed brought this action against Defendants Melody Dawn Taylor (Taylor) and Melody Dawn Taylor as Trustee of the Melody D. Taylor's Children Trust (Children Trust).  Plaintiffs alleged claims under Oregon law for fraud, unfair trade practices, and breach of contract against Taylor and claims for violation of Oregon's Uniform Fraudulent Transfer Act, Or. Rev. Stat. § 95.230, or unjust enrichment against Taylor and the Children Trust.  In their Answer, Defendants' asserted seven Affirmative Defenses (duress, mistake, unconscionability, equitable mortgage, unfair trade practices, constructive fraud, and fraud) and four Counterclaims (unfair trade practices, constructive fraud, fraud, and quiet title).

On January 18, 2007, the Court granted Plaintiffs' Motion for Summary Judgment as to Defendants' Affirmative Defenses of duress, mistake, unconscionability, constructive fraud, and fraud and as to Defendants' Counterclaims for constructive fraud, fraud, and quiet title.

In the Pretrial Order, Plaintiffs only alleged claims for breach of contract, fraudulent conveyance, and quiet title and Defendants only alleged a Counterclaim for equitable mortgage. Pursuant to Federal Rule of Civil Procedure 16(e), the Pretrial Order controls the subsequent course of the action.  Accordingly,

2 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

the only issues for trial were breach of contract, fraudulent conveyance, quiet title, and equitable mortgage.

This matter was tried to the Court from March 13 to March 14, 2007. The parties sought only declaratory relief at trial and did not request or prove damages as to any claim.

## VERDICT

The Court has weighed, evaluated, and considered the evidence presented at trial and has completed its deliberation. Based on its Findings of Fact and Conclusions of law made herein pursuant to Federal Rule of Civil Procedure 52(a), the Court renders the following Verdict:

1.    In favor of Plaintiffs on part of Plaintiffs' breach-of-contract claim based on the Court's finding that Defendants attempted to cloud title to the property and failed to forward rents and other funds to Plaintiff Kreidler pursuant to the contract.

2.    In favor of Defendants on part of Plaintiffs' breach-of-contract claim based on the Court's finding that Taylor's refusal to provide an accounting and to cooperate in developing the property did not breach the parties' contract.

3.    In favor of Plaintiffs on Plaintiffs' quiet-title claim based on the Court's finding that as of August 10,

2004, Plaintiffs Kreidler and Reed jointly owned a 50% interest in the undivided whole of the Gresham property and Taylor owned a 50% interest in the undivided whole of the Gresham property.

4.    In favor of Plaintiffs on Defendants' Counterclaim for equitable mortgage based on the Court's finding that the contract between the parties was not merely security for a loan, and the August 10, 2004, Quitclaim Deed executed by Taylor to Kreidler and Reed does not constitute an equitable mortgage on the property.

5.    In favor of Defendants on Plaintiffs' fraudulent-conveyance claim based on the Court's finding that Taylor did not effectively convey her remaining interest in the Gresham property to the Children Trust with the September 7, 2004, re-recording of the 1999 Quitclaim Deed.

## FINDINGS OF FACT

The Court finds the following facts by a preponderance of the evidence:

1.    On February 24, 1993, Taylor purchased certain real property in Gresham, Oregon, as part of her separate estate.  The property was only partially developed.  Taylor mortgaged the property in June 1997.  Eventually Wells Fargo took over Taylor's

4 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

mortgage on the Gresham property.

2.    On September 10, 1999, Taylor executed a Quitclaim Deed granting her "right, title and interest" in the Gresham property to the "Melody Dawn Taylor's Children Trust at Snomomish County Washington."  Taylor, however, did not identify a trustee on the 1999 Quitclaim Deed.

3.    In approximately April 2004, Taylor contacted Kreidler, a Washington real-estate agent, about purchasing or exchanging the Gresham property for a building or property in Seattle, Washington.

4.    In spring 2004, Kreidler showed Taylor a few properties, and Kreidler and Taylor developed a relationship.

5.    At some point before June 2004, Wells Fargo informed Taylor through a collection agency that she had until August 11, 2004, to pay $96,116.55 in mortgage and escrow costs and $22,694.00 in back property taxes on the Gresham property or the bank would foreclose on the property.

6.    In June 2004, Taylor informed Kreidler that Wells Fargo held a mortgage on Taylor's property, and the bank was threatening to foreclose.  Kreidler suggested Taylor refinance her mortgage to pay her debt and to avoid foreclosure, but Taylor had bad credit due to several factors, including a prior bankruptcy.  Refinancing, therefore, was not practical.

7.    At some point after Taylor informed Kreidler about the

5 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

impending foreclosure, Taylor asked to borrow funds from Kreidler to pay Wells Fargo.  Kreidler did not have the funds to lend Taylor at that time because Kreidler's line of credit was tied up with another property that she was developing.

8.    In mid-July 2004, Taylor met with Kreidler and Reed to seek their help to avoid foreclosure on the Gresham property.  At the meeting, Taylor again asked to borrow money from Kreidler to avoid foreclosure.

9.    Reed advised Kreidler not to lend Taylor the money because he did not believe it was prudent due to Taylor's prior bankruptcy and repeated instances of being unable to service her debt.

10.    Reed suggested to Kreidler that she become a co-owner of Taylor's property in return for paying Taylor's delinquency, and they could then develop the property together.  Kreidler subsequently proposed to Taylor that she would pay Taylor's debt in return for becoming a co-owner of the property and thereafter developing the property.

11.    After the July meeting, Kreidler and Reed traveled to Oregon with Taylor to view the Gresham property.  After seeing the property, Kreidler believed it had good development potential.

12.    Kreidler asked Reed to be a co-owner and partner in the property with her because she did not have the time to go to

6 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

Oregon to oversee development of the property, and she felt she
needed his expertise.

13.   A few days before August 11, 2004, Taylor informed
Kreidler that she urgently needed money to pay Wells Fargo or the
bank was going to foreclose on the property.

14.   On August 10, 2004, Taylor went to Kreidler's office
and signed two documents.   The Agreement Regarding Real Estate
provided in pertinent part:

> Melody Taylor agrees to alienate and transfer an
> individual 50% undivided interest in the property
> in question to Kreidler and Reed.   Taylor agrees
> to cooperate in every respect with efforts by
> Kreidler and Reed to sell/refinance the property
> given its highest and best use, as soon as
> possible - in no case beyond 3 years from the date
> of this Agreement, without compromising its full
> value.
>
> Proceeds of a sale or refinance of the property in
> question must be distributed as follows:  firstly
> to satisfy all liens of record; secondly to repay
> Kreidler for funds advanced for reinstatement;
> thirdly, balance of funds shall be distributed to
> owners of record.
>
> * * *
>
> It is the intent of the signatories below to
> realize a profit from ownership of the property in
> question in the shortest practical time.   The
> parties may amend this agreement at any time in
> writing.

The second Agreement provided in pertinent part:

> This Agreement is Made [sic] on August 10, 2004
> [sic] Between [sic] Anne Marie Kreidler, and
> Michael Reed and Melody D. Taylor regarding the

7 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

property located at 115 NE 10th Drive, Gresham, OR
97030-5607. . . . Melody D. Taylor agrees to deed
Kreidler and Reed 50% ownership in the above
mentioned property in exchange for the services

and help from Kreidler and Reed to free
the property from being foreclosed on.

* * *

All parties agree to cooperate and share the
expenses in the refinancing of the subject
property and to:

1.    Pay off the 1st mortgage in the amount of
      approximately $235,000.00.
2.    Pay off the loan from McDonald financial
      group in the amount of approximately
      $118,811.28 + initial loan cost.
3.    Pay any loan fees and expenses in the
      connection with the refinances.
4.    Pay all taxes and insurance when due.
5.    Pay mechanics lien to plumbing co. of approx
      $3,300 principle [*sic*][.]

Kreidler and Reed's share in the above expenses
shall be 50%, Taylor's share shall be 50%.
(Kreidler and Reed share 25% in all profits and
expenses.  Taylor's share shall be 50% of all
profits and expenses.)

All parties are aware that the refinanced loan in
the amount of approximately $354,500.00 + loan fee
and expenses shall be an obligation secured by
subject property of which obligation Kreidler and
Reed share 50% and Taylor shares 50%
responsibility.

15.  On August 10, 2004, Taylor also executed a Quitclaim

Deed conveying to Plaintiffs "an undivided 50% interest" in the

Gresham property.

16.  The August 10, 2004, Quitclaim Deed was recorded on

August 14, 2004.

8 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

17.  On September 7, 2004, Taylor recorded a "modified" version of the 1999 Quitclaim Deed in which Taylor added herself as trustee of the Children Trust.  Taylor did not have the September 7, 2004, Quitclaim Deed renotarized.

18.  In October 2004, Kreidler faxed Taylor a copy of a Limited Liability Agreement of Gresham Partners L.L.C. for Taylor to sign.  Kreidler and Reed intended the Limited Liability Agreement to form the basis of a partnership of the parties to develop the Gresham property.

19.  Taylor did not sign the document, the L.L.C. was never formed, and the parties' relationship deteriorated.

20.  Taylor has never forwarded rents or other funds received from the Gresham property to Kreidler or to Reed. Neither Kreidler nor Reed paid any of the operating expenses or taxes for the Gresham property after August 2004.

## CONCLUSIONS OF LAW

Based on the Court's factual findings, the Court reaches the following Conclusions of Law:

### A.   Plaintiffs' Claim for Breach of Contract

A contract is a legally enforceable promise or set of promises.  *Ashby v. Employment Div.*, 21 Or. App. 265, 268 (1975). For a contract to exist, there must be an offer that is accepted. *Estey & Assoc., Inc. v. McCulloch Corp.*, 663 F. Supp. 167, 173

(D. Or. 1986).  An offer is a proposal communicated by either words, conduct, or both that would reasonably lead the party to whom it is made to believe the proposal is intended to create a contract if accepted.  *Southworth v. Oliver*, 284 Or. 361, 370 (1978).  *See also Real Estate Loan Fund v. Hevner*, 76 Or. App. 349, 355 (1985).  An acceptance is either words, conduct, or both that would reasonably lead the party who made the offer to believe the terms of the offer had been agreed to.  *Doughty Appliance, Inc. v. Pruitt,* 282 Or. 757, 760 (1978).  When deciding the meaning of the contract, the court should assume the words used in the contract have their ordinary meaning unless it decides both parties intended the words to have another meaning. Or. Rev. Stat. § 42.250.

A contract is fully integrated if a reasonable person under the circumstances would have understood the writing or group of writings to be a complete and exclusive expression of all the terms of their agreement.  *Wescold, Inc. v. Logan Intern., Ltd.* 120 Or. App. 512, 520 (1993).  If a reasonable person under the circumstances would have understood the writing or group of writings to be a complete expression of the parties' agreement as to the terms but might not have understood the writing to be an exclusive statement of the entire contract, the contract is only partially integrated.  *Id.* at 521 (citations omitted).  If the court concludes a contract is fully integrated, then the parties

10 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

may not offer extrinsic evidence of the existence of additional
terms not contained in the writing. *Id.* If the court concludes
a contract is partially integrated, the parties may offer
extrinsic evidence of additional terms if the alleged terms are
"not inconsistent" with the writing and are of a kind that "might
naturally be made" as separate agreements. *Id.* (quoting *Hatley
v. Stafford*, 284 Or. 523, 533 (1978)).

A breach of contract occurs when a party fails to perform as
required by the contract. *Kantor v. Boise Cascade Corp.*, 75 Or.
App. 698, 703 (1985), *rev. denied*, 300 Or. 506 (1986).

In light of the evidence presented at trial, the Court
concludes:

1.   The two Agreements signed by the parties on August 10,
2004, constitute a partially integrated contract in that they
were the complete expression of the parties' agreement that
Taylor would deed to Kreidler and Reed a 50% ownership in the
undivided whole of the Gresham property in exchange for Kreidler
and Reed providing Taylor with the funds to avoid foreclosure on
the property.  The parties did not present any evidence, however,
that they intended the Agreements to fully encompass their
agreement as to the means and manner in which they would develop
the property.

2.   The contract did not require any party to cooperate in
developing the property in any specific manner.  In addition,

Plaintiffs did not produce sufficient evidence at trial to establish the parties had a meeting of the minds as to how the property might be developed.  The evidence established Taylor refused to sign the Limited Liability Agreement that Kreidler had drafted to create an L.L.C. to develop the property.  In addition, Plaintiffs did not provide Taylor with funds to begin the development process with the City of Gresham.

 3. The contract required Taylor to forward all rents and other income from the property to Kreidler.

 4. The contract did not require any party to provide an accounting nor did Plaintiffs present sufficient evidence to establish the parties intended to include a provision in the contract that required an accounting.

 5. Taylor recorded the September 7, 2004, Quitclaim Deed purporting to transfer her interest in the Gresham property to the Children Trust.

 6. Plaintiffs did not seek or prove damages relating to their breach-of-contract claim.

Accordingly, the Court concludes by a preponderance of the evidence that Taylor breached the contract when she did not forward rents or other income from the property to Kreidler.  In addition, by recording the September 7, 2004, Quitclaim Deed purporting to transfer her interest in the Gresham property to the Children Trust, Taylor attempted to cloud title to the

12 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

property in breach of the parties' contract.  Because the

contract did not require Taylor to provide an accounting or to

cooperate with developing the property in a specific manner and

Plaintiffs did not produce sufficient evidence to establish the

parties intended to include those requirements in the contract,

Taylor did not breach the contract by refusing to provide an

accounting or by refusing to cooperate in developing the

property.

**B.    Plaintiffs' Claim for Quiet Title**

"Plaintiffs in a quiet-title suit . . . meet their burden of

proof when they show [by a preponderance of the evidence] a title

which is superior to that of the defendant who has asserted an

adverse claim."  *Rohner v. Neville*, 230 Or. 31, 38 (1961)

(citations omitted).  A plaintiff in a quiet-title action "must

prevail on the strength of his own title rather than upon the

weaknesses of the defendant's title."  *Id.* (citations omitted).

Oregon Revised Statutes § 93.410 requires deeds executed

within Oregon or "of any interest in lands [in Oregon], shall be

. . . acknowledged before any judge of the Supreme Court, circuit

judge, county judge, justice of the peace or notary public within

the state."

1.    The Court concluded in its January 18, 2007, Opinion

and Order that Taylor's 1999 Quitclaim Deed to the Children Trust

was invalid because it failed to name a trustee who was legally

13 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

capable of taking title to the property.  The 1999 Quitclaim
Deed, therefore, did not transfer Taylor's title or interest in
the Gresham property to the Children Trust.

2.    On August 10, 2004, Taylor contracted to "alienate and
transfer an individual 50% undivided interest" in the Gresham
property to Kreidler and Reed.

3.    On August 10, 2004, Taylor executed a Quitclaim Deed
granting to Kreidler and Reed jointly "an undivided 50% interest"
in the Gresham property.

4.    Plaintiffs recorded the August 10, 2004, Quitclaim Deed
on August 14, 2004.

5.    The contract and the Quitclaim Deed are unambiguous.
Together they are legally sufficient to transfer a 50% interest
in the property jointly to Kreidler and Reed.

6.    On September 7, 2004, Taylor recorded a Quitclaim Deed
purporting to transfer her remaining interest in the Gresham
property to the Children Trust with Taylor as trustee.

7.    Taylor did not have the September 7, 2004, Quitclaim
Deed renotarized nor is there any evidence that she had it
acknowledged before a judge or justice of the peace.

8.    Plaintiffs did not seek or prove damages related to
their claim to quiet title.

Accordingly, the Court concludes by a preponderance of the
evidence that Taylor transferred a 50% interest in the undivided

14 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

whole of the Gresham property to Kreidler and Reed jointly on August 10, 2004.  The Court further concludes the September 7, 2004, Quitclaim Deed was invalid and did not transfer Taylor's interest to the Children Trust.

The Court, therefore, declares as of August 10, 2004, the Gresham property was owned jointly by Kreidler and Reed (50%) and by Taylor (50%).

## C.    Plaintiffs' Claim for Fraudulent Conveyance

To meet their burden of proof on the issue of fraudulent conveyance, Plaintiffs must show by a preponderance of the evidence that (1) a conveyance (2) was made by Defendants with the actual intent to hinder, to delay, or to defraud.  *See* Or. Rev. Stat. § 95.230(1).  *See also Morris v Nance*, 132 Or. App. 216, 223 (1994).

As noted, on September 7, 2004, Taylor recorded an amended Quitclaim Deed in an effort to transfer her remaining interest in the Gresham property to the Children Trust with Taylor named as the trustee.  Taylor, however, already had deeded to Kreidler and Reed an undivided 50% interest in the whole property by way of the parties' contract and the recording of the August 10, 2004, Quitclaim Deed.  The September 7, 2004, Quitclaim Deed, therefore, was invalid and, as a result, did not transfer Taylor's interest to the Children Trust either legally or fraudulently.

15 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

The Court, therefore, concludes by a preponderance of the evidence that the September 7, 2004, Quitclaim Deed was not a fraudulent conveyance.

## D.    Defendants' Counterclaim for Equitable Mortgage

"A deed absolute on its face may be shown to be a mortgage. The proof must be by clear and convincing evidence. 'There is no conclusive test of universal application to determine whether a deed, absolute on its face, is a mortgage.'" *French v. Boise,* 50 Or. App. 369, 375 (1981)(quoting *Blue River Sawmills v. Gates*, 225 Or. 439, 461 (1961)). Oregon courts have held

> "if the intent appears that property was conveyed
> and received as security for the fulfillment of an
> obligation, the form of the instrument becomes
> immaterial and the true nature of the transaction
> may be shown by parol evidence. Neither fraud,
> mistake nor accident need be proven. The primary
> inquiry relates to the intention of the parties at
> the time the transaction was consumated [*sic*]."

*Id.* at 376 (quoting *Umpqua Forest Ind. v. Neenah-Ore. Land Co.*, 188 Or. 605, 614 (1950)).

> Factors which may be used to help determine the
> intent of parties include, but are not limited to:
> (1) the situation of the parties including their
> business and social relationship, (2) price fixed
> in relation to the actual value of the property
> conveyed, (3) surrender of possession by grantor,
> (4) payment of taxes, (5) payment of rent,
> (6) liability by grantor to pay interest,
> (7) financial circumstances of the grantor, and
> (8) conduct of the parties before and after the
> transaction.

*French*, 50 Or. App. at 376. (citations omitted).

Defendants have not produced clear and convincing evidence

16 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

that the August 10, 2004, Quitclaim Deed was an equitable
mortgage.  Kreidler and Reed were not in the business of loaning
money, and they did not have a long-term relationship with Taylor
that would support an inference that they would be willing to
loan money to Taylor.  In fact, the evidence establishes Kreidler
and Reed would not loan the money to Taylor due to her previous
inability to service her debt and would not have provided Taylor
with any funds without becoming co-owners of the property.  In
addition, at the time Taylor asked Kreidler for a loan,  Taylor
had poor credit, had previously entered bankruptcy, and was close
to having the bank foreclose on the property.   There is not any
evidence that Taylor had other options to avoid foreclosure.  The
Court, therefore, concludes the parties' contract was not a loan
agreement and the August 10, 2004, Quitclaim Deed executed by
Taylor to Kreidler and Reed was not an equitable mortgage on the
property that was intended to secure Plaintiffs' right to be
repaid.

## CONCLUSION

For these reasons, the Court enters its Verdict as follows:

1.   In favor of Plaintiffs on part of Plaintiffs' breach-
     of-contract claim based on the Court's finding that
     Defendants attempted to cloud title to the property and
     failed to forward rents and other funds to Plaintiff

Kreidler pursuant to the contract.

2.    In favor of Defendants on part of Plaintiffs' breach-of-contract claim based on the Court's finding that Taylor's refusal to provide an accounting and to cooperate in developing the property did not breach the parties' contract.

3.    In favor of Plaintiffs on Plaintiffs' quiet-title claim based on the Court's finding that as of August 10, 2004, Plaintiffs Kreidler and Reed jointly owned a 50% interest in the undivided whole of the Gresham property and Taylor owned a 50% interest in the undivided whole of the Gresham property.

4.    In favor of Plaintiffs on Defendants' Counterclaim for equitable mortgage based on the Court's finding that the contract between the parties was not merely security for a loan, and the August 10, 2004, Quitclaim Deed executed by Taylor to Kreidler and Reed does not constitute an equitable mortgage on the property.

5.    In favor of Defendants on Plaintiffs' fraudulent-conveyance claim based on the Court's finding that Taylor did not effectively convey her remaining interest in the Gresham property to the Children Trust with the September 7, 2004, re-recording of the 1999 Quitclaim Deed.

The Court directs Plaintiffs' counsel to submit a judgment consistent with this Verdict no later than June 8, 2007.

IT IS SO ORDERED.

DATED this 24th day of May, 2007.

/s/ Anna J. Brown
_____

ANNA J. BROWN
United States District Judge

19 - VERDICT, FINDINGS OF FACT, AND CONCLUSIONS OF LAW

Real Property in the County of Multnomah, State of Oregon, described as follows:

A tract of land in Section 10, Township 1 South, Range 3 East of the Willamette Meridian, in the City of Gresham, Multnomah County, Oregon, described as follows:

BEGINNING at the intersection of the Northerly line of N.E. 10th Drive with the East line of N. Main Avenue, as said streets are now established and located, thence North along said East street line 100 feet; thence Easterly to a point on the East line of the first tract of land described in Deed to Charles Cleveland and Annie Cleveland, husband and wife, recorded September 13, 1920 in Book 828, Page 5, Deed Records, which point is 220 feet South of the intersection of said East line with the Southerly line of N.E. Division Street, as said street is now established and located, for the true place of beginning of the tract to be described; thence Southerly along the East line of said Charles Cleveland tract, 130 feet, more or less, to an angle corner of said tract, said Corner being 190 feet due West from the intersection of the North line of N.E. 9th Street, formerly 7th Street, with the West line of N.E. Hood Avenue, thence Southwesterly 160 feet, more or less, to a point on the Northerly line of N.E. 10th Drive, formerly Division Street, which is 256 feet Westerly, measured along said Northerly street line, from its intersection with the West line of N.E. Hood Avenue; thence Westerly along the Northerly line of N.E. 10th Drive 180 feet; thence Northerly 225 feet, more or less, to a point on a line drawn Easterly from a point on the East line of N. Main Avenue 100 feet North of its intersection with the Northerly line of N.E. 10th Drive to a point on the East line of the first tract of land in the above described Deed to Charles Cleveland et ux., which is 220 feet South of its intersection with the Southerly line of N.E. Division Street, said first described point being 180 feet Westerly, measured along the line described herein, from the true place of beginning, thence Easterly 180 feet to the true place of beginning.

EXCEPTING THEREFROM a parcel of land in the Northwest quarter of Section 10, Township 1 South, Range 3 East of the Willamette Meridian, in Multnomah County, Oregon, described as follows:

BEGINNING in the North right-of-way of N.E. 10th Drive, formerly County Road No. 51, now under the jurisdiction of the City of Gresham, at a point which lies 375 feet East of (when measured at right angles) the East line of the J. Powell Donation Land Claim; thence North 66°00'58" West along the North right-of-way of said N.E. 10th Drive 22.37 feet to the East line of that parcel of land conveyed to Robert L. Hays by Instrument recorded July 28, 1966 in Book 518, page 861, Deed Records, Multnomah County, Oregon thence North 10°22'19" East along the East line of said parcel of land conveyed to Robert L. Hays 131.08 feet to a point; thence South 01°18'32" West parallel to and 375.00 feet East of (when measured at right angles) the East line of the J. Powell Donation Land Claim 138.04 feet to the point of beginning.

Tax Parcel Number R339282